IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DIDEROT NGUESSON DIFFO,<br>Plaintiff,<br><br>v.<br><br>SIMVENTIONS, INC.,<br>Defendant. | ) | Civil Action No. 3:25CV849 (RCY) |

**MEMORANDUM OPINION**

In this action, *pro se* Plaintiff Diderot Nguesson Diffo ("Plaintiff") brings suit alleging that Defendant SimVentions, Inc. ("Defendant") terminated his employment because of his national origin and disability, and failed to accommodate his disability, in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. The case is before the Court on Defendant's Motion to Dismiss. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, it is appropriate to deny the Motion to Dismiss with respect to Counts One and Two and grant the Motion to Dismiss with respect to Count Three.[1]

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this action in this Court on October 14, 2025. Compl., ECF No. 1. Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) on November 21, 2025. Def.'s Mot. Dismiss, ECF No. 8; Def.'s Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 9. On November 24, 2025, the Court issued Plaintiff a Notice pursuant to *Roseboro v. Garrison*, 528

[1] On September 24, 2026, the Court issued an Order granting in part and denying in part the Motion to Dismiss, promising an opinion to follow. Order, ECF No. 24. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

F.2d 309 (4th Cir. 1975), advising him of the pending dispositive motion and his opportunity to respond. Not., ECF No. 10. Plaintiff timely filed his Response on December 12, 2025. Pl.'s Resp. Opp'n Mot. Dismiss ("Resp."), ECF No. 16. Defendant filed its Reply on December 18, 2025, Def.'s Reply Supp. Mot. Dismiss ("Reply"), ECF No. 17, rendering the Motion fully briefed and ripe for review.[2]

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

---

[2] On December 29, 2025, Plaintiff filed a so-called "Second Response" to the Motion to Dismiss, ECF No. 18, which the Court deems to be an improper sur-reply. The Local Rules prohibit the filing of sur-replies without leave of court. E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court."). "Sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on the matter." *Trs. of Columbia Univ. v. Symantec Corp.*, 2019 WL 13189619, at *2 (E.D. Va. Oct. 10, 2019). "Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply." *Dillard v. Kolongo*, 2017 WL 2312988, at *6 (E.D. Va. May 25, 2017). Although this Court recognizes Plaintiff's *pro se* status, Plaintiff is nevertheless obligated to abide by the Local Rules. In any event, Defendant's Reply introduced no new arguments or new material that would warrant a sur-reply. Accordingly, this Court will not consider Plaintiff's sur-reply in adjudicating the instant Motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged and matters of public record subject to judicial notice. *Id.*

Although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 618 (4th Cir. 2020). Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

So, a pro se complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

**III. FACTUAL ALLEGATIONS**

"At the motion to dismiss stage, the Court may consider the face of the complaint, [and] documents attached to the complaint . . . ." *Philips*, 572 F.3d at 180. The Court relies heavily on the attachments to Plaintiff's Complaint in ascertaining the relevant factual allegations, given the sparseness of the facts contained in the *pro se* Civil Complaint form.

Defendant hired Plaintiff on November 6, 2023. Compl. Ex. 4 at 1, ECF No. 1-4. Plaintiff worked with Defendant's Cybersecurity Group ("CSG"). Compl. Ex. 6 at 1, ECF No. 1-6. Plaintiff is of Cameroonian descent. Compl. 3. He experiences chronic back and neck pain from his military service and has an anxiety disorder. *Id.* at 4–5. Plaintiff disclosed both conditions to Defendant during his interview, before he was hired. *Id.* at 4.

Plaintiff was managed by "Miss Sharon." *Id.* at 3. "Since early August 2024, [Plaintiff did] not feel comfortable at all working with [his] manager [because] she did not care for [him] going to [his] appointment [sic] or allow [him] to take a break." *Id.* at 4. Plaintiff requested to change his manager but was refused. *Id.*

On October 2, 2024, Defendant placed Plaintiff on a 30-day Performance Improvement Plan ("PIP"), stating that Plaintiff's "level of productivity, engagement, and work quality have been below expectations overall." Compl. Ex. 6 at 1. The PIP required Plaintiff to complete additional tasks, including preparing three additional daily reports detailing what he accomplished that day, what he planned to accomplish the next day, and the status of his work tickets. Compl. Ex. 4 at 2. The additional requirements of the PIP gave Plaintiff "more stress and panic" and caused his "anxiety disorder to worsen." Compl. 4.

On November 20, 2024, Defendant notified Plaintiff that he failed to meet the requirements of the PIP and removed him from his work on the ManTech Systems Engineering Directorate (SED) contract. Compl. Ex. 10 at 1, ECF No. 1-10. Defendant provided a formal PIP Summary document disclosing his failure to satisfy the PIP. *Id.* That same day, Plaintiff began a one-week period of paid leave, followed by 30 days of leave without pay. *Id.* at 3. Plaintiff refers to this period as being "put on the bench." *Id.* at 4.

At the meeting to discuss Plaintiff's removal from the SED contract, Plaintiff contested the decision to "put [him] on the bench." *Id.* at 7. He presented evidence that the colleague assigned to "coach" him during the PIP period, whom Plaintiff describes as a "senior employee," had been making mistakes. *Id.*; Compl. 4. That colleague had not been placed on a PIP or benched. Compl. 4. When Plaintiff showed Defendant the errors made by his coach, he was told the errors were "not [the only] reasons why [Defendant] put [him] on the bench." Compl. Ex. 10 at 7. Plaintiff asked what the other reason is and Defendant responded, "again the decision has been made, and it [sic] will be no changes." *Id.* Plaintiff also notified Defendant that he did not want to be benched because his "doctor . . . recommends continuing working to help . . . maintain [his] conditions or health improved [sic]." *Id.*

On February 3, 2025, Defendant sent Plaintiff a letter notifying him that he was terminated effective February 6, 2025. *Id.* at 1. In the termination letter, Defendant represented that (1) Plaintiff informed Defendant that he would be seeing a doctor in December 2024 and was interested in participating in a short-term disability leave plan; (2) Plaintiff "ha[d] not initiated a claim for short-term disability leave, and [Defendant had] not received anything from [Plaintiff] or [Plaintiff's] healthcare provider that would support such leave;" and (3) "due to [Plaintiff's] failure to satisfy the requirements of the PIP and because there are no other projects on which [Defendant] can staff you at this time," Plaintiff's employment was terminated. *Id.*

On February 27, 2025, Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC"). Compl. Ex. 3 at 3. Therein, Plaintiff complained of discrimination based on "color" and "disability." *Id.* Plaintiff further alleged, "[m]y language is foreigner, and I am black. I have been experienced discriminated [sic] from my white manager." *Id.* at 4. On October 2, 2025, the EEOC issued a Right to Sue letter to Plaintiff. *Id.* at 1. On October 14, 2025, Plaintiff timely filed the instant action *pro se*. *See generally* Compl.

## IV. ANALYSIS

Based on the aforementioned facts, Plaintiff asserts three claims against Defendant: (1) discrimination based on national origin; (2) discrimination based on disability; and (3) failure to accommodate an employee's disability.[3]

Defendant moves to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff cannot meet the *prima facie* elements of his claims for disability discrimination and denial of accommodation under the Americans with Disabilities Act or national origin discrimination under Title VII of the Civil Rights Act. Mem. Supp. 1.

The Court addresses Defendant's challenges to each claim, in turn.

### A. Count One – National Origin Discrimination

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C.A. § 2000e–2(a). When ascertaining whether a plaintiff has plausibly stated a claim for discrimination in violation of Title VII, courts measure the allegations against the two available methods of proof

[3] Plaintiff did not organize his complaint into distinct Counts. *See generally* Compl. This configuration of the Counts comes from Defendant's Motion to Dismiss, wherein Defendant represents that it moves to dismiss the Complaint in its entirety. *See* Mem. Supp. 1. Plaintiff responded to each Count as configured by Defendant in his Response in Opposition to the Motion to Dismiss and did not indicate that any violations were unrepresented by these three Counts. *See generally* Resp.

for establishing such a claim: (1) utilizing ordinary principles of proof, i.e., direct and circumstantial evidence, to demonstrate that the protected characteristic was a motivating factor in the adverse employment action; or (2) relying on the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires the plaintiff to establish a "prima facie case" of discrimination, before the burden shifts to the defendant to rebut such showing. *See Johnson v. Balt. City*, 163 F.4th 808, 814–15 (4th Cir. 2026); *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572, 572 n.3 (4th Cir. 2023). Critically, a plaintiff is not required to plead the elements of a prima facie case, as that is an evidentiary standard, not a pleading standard; as noted by the Fourth Circuit, the Supreme Court has made clear that "applying *McDonnell Douglas* to Rule 12(b)(6) motions would establish a 'heightened pleading standard' in contravention of Rule 8(a)(2)." *Woods v. City of Greensboro*, 855 F.3d 639, 646–48 (4th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))).

Defendant argues that Plaintiff has pled insufficient facts as to the second and fourth elements set forth in *McDonnell Douglas* and therefore Plaintiff fails to state a claim; however, Defendant does not challenge the sufficiency of the allegations to state a claim under ordinary principles of proof. This is fatal to Defendant's dismissal argument. *See Woods*, 855 F.3d at 646–48 ("[A]pplying *McDonnell Douglas* to Rule 12(b)(6) motions would establish a 'heightened pleading standard' in contravention of Rule 8(a)(2)." (quoting *Swierkiewicz*, 534 U.S. at 512)).

Regardless of whether Defendant is correct with respect to whether Plaintiff's allegations satisfy the elements of a prima facie case under *McDonnell Douglas*, that nevertheless leaves unchallenged whether Plaintiff's allegations are sufficient to state a claim for national origin discrimination utilizing ordinary principles of proof. As it would be improper for the Court to conduct its own analysis of the sufficiency of Plaintiff's allegations beyond the single ground for

deficiency articulated by Defendant (even if Plaintiff were not *pro se*), the Court denies the Motion to Dismiss as to Count One.

**B. Count Two – Disability Discrimination**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Title VII and ADA claims are analyzed in an identical fashion,[4] so a plaintiff may plausibly allege an adverse employment action in violation of the ADA through the same two methods described in connection with Plaintiff's Title VII claim.

Defendant once again argues that Plaintiff has insufficiently pled discrimination based on disability because Plaintiff cannot satisfy the third and fourth element of the prima face case under *McDonnell Douglas*. Because Defendant again improperly relies on the "heightened standard" of *McDonnell Douglas* to argue that Plaintiff has not stated a claim, the Court denies the Motion as to Count Two, just as for Count One.

**C. Count Three – Failure to Accommodate**

To show an employer's failure to accommodate under the ADA, the plaintiff must prove: (1) that he had a disability within the statutory meaning; (2) that the employer knew of his disability; (3) that a reasonable accommodation would permit him to perform the essential functions of the position; and (4) that the employer refused to make the accommodation. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "For purposes of the ADA, 'reasonable accommodations' may comprise 'job restructuring, part-time or modified work schedules.'" *Id.* (citing 42 U.S.C. § 12111(9)(B)).

---

[4] *See Kelly v. Town of Abingdon*, 90 F.4th 158, 169 n.6 (4th Cir. 2024) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose . . . courts have routinely used Title VII precedent in ADA cases." (quoting *Fox v. Gen Motors Corp.* 247 F.3d 169, 176 (4th Cir. 2001))).

Defendant contends that the Complaint fails to specify the accommodations sought, when such requests were made, or how they would have enabled Plaintiff to perform the essential functions of his job. Mem. Supp. 10.[5]

Plaintiff contends that he was denied adequate accommodation for his chronic back and neck pain and anxiety. He alleges that he requested part-time work or time to rest, but that his employer instead provided a standing desk, which did not help. Compl. Ex. 4 at 3 ("[M]y VA physician recommended a time for me to sleep or even part time . . . [b]ut I was given [sic] is the stand[ing] desk. It did not help . . . I asked to take a maximum of 2 hours nap to fresh up my head. And that [] I will also work during the night when I cannot sleep."). Plaintiff further alleges that his supervisor was dismissive of his accommodation requests, telling him that she also has back pain. *Id.* Finally, Plaintiff alleges that his doctor recommended he continue working, so his period of leave in November 2024 went against her recommendation. Compl. Ex. 10 at 7.

Here, the parties do not dispute that Plaintiff has alleged that he had a qualifying disability, and Defendant knew of his disability. Plaintiff has nevertheless failed to adequately plead his failure to accommodate claim, because he has not pled facts indicating that "with reasonable accommodation he could perform the essential functions of the position." *Wilson*, 717 F.3d at 345. Part-time work may be a reasonable accommodation under the ADA, depending on the functions and requirements of the position. *Id.* However, Plaintiff's claim falls short because he neither identifies the essential functions of his position nor alleges that part-time work, work at night, or rest breaks would still allow him to perform those essential functions. Thus, because Plaintiff has

[5] Defendant also raises arguments predicated on facts not properly before the Court, so the Court does not engage with such arguments here.

not pled facts in support of an essential element of his claim in the documents properly before the Court, the Court grants the Motion to Dismiss as to Count Three.[6]

## V. CONCLUSION

For the reasons detailed above, the Court denied the Motion to Dismiss as to Counts One and Two but granted it as to Count Three. *See* Order, ECF No. 18. This matter will accordingly proceed on the basis of Counts One and Two.

/s/ RCY
Roderick C. Young
United States District Judge

Date: October 15, 2026
Richmond, Virginia

[6] Because the Complaint fails to allege sufficient facts as to the third element of a failure to accommodate claim, it is unnecessary for the Court to determine whether Plaintiff adequately pled that Defendant failed refused some requested accommodation.